McIVER PARK, INC., v. W. J. BRINN and Wife, MARGARETTA H. BRINN (Original Defendants), and S. J. HINSDALE, MRS. JOHN M. WINFREY, MRS. JOHN C. ENGLEHART, MISS NELL HINSDALE, MRS. HAROLD JOSLIN, and JOHN W. HINSDALE (Additional Defendants).

(Filed 3 November, 1943.)

**1. Trial § 11—**

Where actions are pending in the same court, at the same time, between the same parties and involving substantially the same facts, they may be consolidated. This principle applies to tax foreclosure suits. C. S., 7987, 7990.

**2. Process § 12—**

On objection to the original summons for that it fails to show that it was received by the sheriff, where it appears from the judgment roll that a summons, called an *alias,* was later issued and served, the persons so served are in court and bound by the judgment therein.

**3. Pleadings § 29½ : Appeal and Error § 37b—**

If any pleadings, summons, affidavit, or order is lost or withheld by any person, the court may authorize a copy to be filed and used instead of · the original, C. S., 544; and the judgment of the trial court permitting lost pleadings, etc., to be substituted, is not reviewable.

**4. Evidence § 33½—**

. On application to substitute a copy for a lost original *alias* summons, it is competent for a deputy sheriff to testify that he remembers making service of such *alias* summons as indicated on the copy thereof.

PARK, INC., *v.* BRINN.

#### 5. Judgments § 29—

Parties to a tax foreclosure suit, who have been served, are bound by the judgment therein without regard to: (1) the authority, or want thereof, in an attorney who receipted for their share of proceeds of sale on the judgment docket; or (2) the validity of a deed to one holding title from purchaser in such tax suit, by a married woman (a party) without the joinder of her husband.

#### 6. Taxation § 40c—

Where the judgment of foreclosure, in a tax suit, C. S., 7990, authorized a sale, in default of payment of all taxes, etc., on or before sixty days from the date of the judgment, and the original sale was held within sixty days of such date and after two resales, the last of which was held more than three months after the date of the judgment, the sale was finally consummated, there was ample opportunity to redeem, and sale and confirmation are valid.

#### 7. Same: Infants §§ 12, 15—

In a suit to enforce a tax lien (C. S., 7987) by foreclosure (C. S., 7990), where the affidavit, orders and notices appear sufficient in form to constitute service by publication upon all persons named therein, both adult and minors, their heirs and assigns, known and unknown, C. S., 484 (3) and (7), yet, minors, if any, must be represented by guardian, or guardian *ad litem*, otherwise such minors are not bound by the judgments in the action. C. S., 451, 452, 453, and Machinery Act of 1939, ch. 310, Art. XVII, sec. 1719 (e).

#### 8. Judicial Sales §§ 6, 7: Taxation § 40c—

In the absence of fraud, or the knowledge of fraud, one who purchases at a judicial sale, or who purchases from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter, and that the judgment on its face authorized the sale.

#### 9. Specific Performance § 4—

Specific performance of a contract to convey land will not be decreed when the vendor cannot make a good title to the land sold, or when his title thereto is doubtful, or when he can convey only an undivided interest therein.

#### 10. Infants §§ 12, 15: Taxation § 40c—

Where the record in a tax foreclosure proceeding shows an unknown party in interest, without evidence and finding that he left no minor heirs and no other heirs not before the court, the judgment confirming the sale and deed to the purchaser are invalid as to the interest of any minor heirs of such party.

APPEAL by defendants W. J. Brinn and wife, Margaretta H. Brinn, from *Frizzelle, J.,* at Chambers by consent, 19 August, 1943. From LEE.

Civil action for specific performance of written contract for purchase of certain land.

These facts appear to be uncontroverted:

On 15 July, 1941, plaintiff and defendant W. J. Brinn entered into a written contract by the terms of which plaintiff agreed that, on or before 24 July, 1941, and for an agreed purchase price, it would make, execute and deliver to him, or such person as he may in writing direct, "a good and sufficient deed, with full covenants and warranties, release of dower, etc.," conveying subject to certain restriction referred to, "a good and merchantable title in fee simple" to a certain lot of land, specifically described, and being Lot No. 5 in the Palmer addition to McIver Park surveyed as set forth, containing six acres, more or less; and defendant W. J. Brinn agreed to accept such deed so tendered and to pay the agreed purchase price. Defendant W. J. Brinn having directed that deed be made to him and his wife, plaintiff, on 15 July, 1941, and again on 29 August, 1941, tendered to defendants W. J. Brinn and wife a deed sufficient in form to meet the requirements of its agreement to convey said land subject to restrictions referred to as above set forth, but defendants refused to accept same and to pay the purchase price for that, aside from the restrictions to which the conveyance was to be subject, plaintiff did not have, and could not convey same by a good and merchantable title in fee simple.

The land so in controversy is embraced within the boundary of certain tracts of land, containing 117.6 acres more or less, of which Job Palmer died seized about the year 1910 and which was divided among his four heirs at law by order of court in 1911. To his son Amos Palmer, referred to also as J. Amos Palmer and as J. A. Palmer, lot No. 3, containing 22¼ acres, and subdivision A of lot No. 1, known as the dower lot, containing 6 acres, were allotted; and to his son Walter Palmer, referred to also as J. Walter Palmer and as J. W. Palmer, lot No. 4, containing 23¼ acres, and subdivision D of lot No. 1, known as the dower lot, containing 5½ acres, were allotted. The subdivisions A and D of lot No. 1 were allotted subject to the dower of Emeline Palmer, widow of Job Palmer, who died in the year 1932. And the land in controversy is part of the lands so allotted to Amos Palmer and to Walter Palmer.

As to the Amos Palmer land so allotted to him in the division of the Job Palmer land: J. Amos Palmer and wife, Minnie, by deed dated 21 February, 1912, and registered, conveyed same to his son, Sam Palmer, and his daughter, Lenora Palmer (who afterwards married Ned Berryman), and on 26 April, 1938, Lenora Palmer Berryman and husband, Ned Berryman, by quitclaim deed, of record, conveyed to K. R. Hoyle her one-half interest and other interest she might have in the two lots conveyed to her as above stated. And as to the Walter Palmer land allotted to him in the division of the Job Palmer land,

Walter Palmer died in the year 1929 seized of same and survived by his wife, Margaret Palmer, and two children, Henrietta, who married Ed McNeill, and Lula Belle Palmer. Thereafter, on 30 September, 1938, two separate foreclosure proceedings were instituted by Lee County under C. S., 7987, and C. S., 7990, to foreclose liens of delinquent taxes on the Amos Palmer land and on the Walter Palmer land, respectively. And plaintiff claims title to land in controversy under commissioner's deed executed under authority of orders in said tax foreclosure proceedings. The portions of these proceedings to which the questions involved on this appeal relate will be referred to in proper place hereinafter.

This cause was referred, and to certain findings of fact and conclusions of law made by the referee both plaintiff and defendants Brinn filed exceptions, and to the rulings of judge of the Superior Court on these exceptions, and to judgment rendered, defendants Brinn except and assign error, and appeal to the Supreme Court.

*K. R. Hoyle and W. W. Seymour for plaintiff, appellee.*
*Teague & Williams for defendants, appellants.*

WINBORNE, J. While the record on this appeal is voluminous, and the judgment rolls in the tax foreclosure proceedings appearing as exhibits, and as supplemented by addenda, are unusual in their arrangement, sufficient facts are discoverable, and have been ferreted out, for an understanding of the points to which the challenge to the judgment below is directed as set forth in questions involved as stated in brief for appellants filed in this Court. These questions, with pertinent facts, are considered *seriatim.*

The first, third and eighth questions may be considered together. They are not sustainable. The first relates to the refusal of the court to make new parties to this action. The third relates to a finding by judge of Superior Court that the summons issued in November, 1939, in the tax foreclosure proceeding relating to the Amos Palmer land was just another summons in the same action as that instituted in September, 1938—in amendment to finding by referee that it commenced a new action. The eighth challenges the validity of an order of the clerk of Superior Court consolidating the action as originally instituted and the action resulting from the issuance of summons in November, 1939. The facts show that while the action was originally instituted under C. S., 7987, and C. S., 7990, for the foreclosure of the lien of delinquent taxes for the years 1928 to 1936, a change was made in attorney for the plaintiff, Lee County, and a summons was issued in November, 1939, and another complaint was filed declaring on the lien of delinquent taxes for years 1933 to 1937, both inclusive. In his answer to this complaint, defendant

K. R. Hoyle, individually and as Trustee, suggested and prayed that the two actions (so referred to) be consolidated. The order of consolidation followed in March, 1940. And the judgment roll of the proceeding fails. to show objection by any party thereto. The power of the court to consolidate certain actions is recognized and frequently exercised. Where actions are pending in the same court, at the same time, between the same parties, and involving substantially the same facts, they may be consolidated. See McIntosh N. C. P. & P., 536, *et seq. Henderson v. Forrest,* 184 N. C., 230, 114 S. E., 391; *Brady v. Moton,* 185 N. C., 421, 117 S. E., 339; *Blount v. Sawyer,* 189 N. C., 210, 126 S. E., 512, and cases cited.

Therefore, if the issuance of the summons in November, 1939, commenced a new action the order of consolidation was proper, as both were pending in the same court, at the same time, between the same parties, and involved substantially the same facts. But appellant also contends that the summons issued in November, 1939, fails to show that it was received by the sheriff, and, hence, no new action was instituted. Nevertheless, the judgment roll shows that a summons called an *alias* was issued on 5 March, 1940, and was served either personally or by publication, and the referee so finds, and the judge properly approves the finding. The persons served include those whom the court refused to make parties to present action. They were in court there, and, except such as were minors, for whom no guardian *ad litem* was appointed, are bound by the judgment rendered there, and, hence, there was no necessity for them to be brought into court in this action.

The second question as restated in supplemental and additional brief of counsel for appellant relates to this factual situation: In the tax foreclosure proceeding relating to Amos Palmer land, it being made to appear by affidavit of K. R. Hoyle, original attorney for plaintiff therein, and a party thereto, that the original papers had been lost, and could not after due diligence be found, but that the papers presented by him are true and correct copies of (a) the original *alias* summons and return showing service on certain named defendants, (b) affidavits and order for publication of summons and copies served, (c) answer of K. R. Hoyle and order appointing Edwards as commissioner, (d) order substituting T. J. McPherson as commissioner in certain tax cases, and reports of Edwards, commissioner, and raised bids and orders, the clerk, finding that such papers are true copies of the originals, ordered that same be substituted and restored and ordered filed as a part of the judgment roll in the cause. And it does not appear that any objection was made in the tax foreclosure proceeding as to the regularity of the order substituting copies for the lost originals. However, defendants Brinn in present action object and except to admitting in evidence that part of the judg-

ment roll.  Furthermore, said defendants herein object and except to testimony of Deputy Sheriff Bullock that he remembers making service of the *alias* summons as indicated thereon.

These exceptions are properly overruled for these reasons: First: It is provided by statute in this State, C. S., 544, that if any pleading is lost or withheld by any person, the court may authorize a copy to be filed and used instead of the original.  Moreover, in *Bray v. Creekmore,* 109 N. C., 49, 13 S. E., 723, it is held that judgment of the trial court permitting lost pleadings to be substituted is not reviewable.  See also *Walden v. Cheek,* 193 N. C., 744, 138 S. E., 13.  Second: The competency of the testimony of the officer finds support in the recent case of *Lee v. Hoff,* 221 N. C., 233, 19 S. E. (2d), 858, where the authorities are cited.

The fourth question is formal and, in the light of decision on other questions, needs no consideration.

The fifth and ninth questions may be considered together.  The fifth relates to a receipt on the judgment docket for the distributive shares of the balance of proceeds of sale of the lands, after payment of taxes and costs, due Thomas Palmer and Charles (Jabo) Palmer.  It is in these words "Received of W. G. Watson, C. S. C., his check #992 for $333.33 in full settlement of amount due Tom and Jabo Palmer as stated above.  This April 9, 1941.  (Signed) H. F. Seawell, Jr., Attorney for above named under agreement from Lenora Berryman."

H. F. Seawell, Jr., not having appeared in the case as attorney for Thomas Palmer and Charles (Jabo) Palmer, defendants Brinn challenge the efficacy of the receipt as an estoppel upon Thomas Palmer and Charles (Jabo) Palmer.  Be that as it may, the judgment roll in the tax foreclosure reveals, and the referee finds as a fact, and the judge approves the finding that notice of summons as to Thomas Palmer and Charles (Jabo) Palmer was duly served by publication, pursuant to an order of the clerk dated 5 October, 1938, directing each of them to appear at the office of the clerk of Superior Court of Lee County on or before 11 November, 1938, and answer or demur to the complaint or judgment would be rendered against them as prayed; that they did not answer, and that judgment was rendered against them, and no appeal therefrom was taken.  The ninth question relates to the correctness of the ruling of the court that Charles (Jabo) Palmer was duly served with summons and made a party to the foreclosure proceeding.  The above answers the question, and the consolidation order to which the eighth question relates removes all doubt that Charles (Jabo) Palmer was a party to the action when the orders of foreclosure and confirmation of sale were entered.  Hence, these questions fail to present error.

The sixth question relates to the effect of a finding by the judge that after the delivery and registration of the deed from the commissioner to H. A. Palmer, purchaser of the Walter Palmer land at the foreclosure sale, Lula Belle Palmer purchased from H. A. Palmer a portion of the land, and received a deed from him therefor, and that later she, with the joinder of Henrietta McNeill, but without the joinder of the husband of Henrietta McNeill, executed and delivered to McIver Park, Inc., a warranty deed therefor. Appellant challenges the binding effect of this deed in so far as Henrietta McNeill is concerned. The purpose of the introduction of this deed in evidence apparently was to show a ratification of the sale by both Lula Belle Palmer and Henrietta McNeill, whom the court finds were the owners of the land at the time of the institution of the tax foreclosure action.

If it be conceded that the purpose failed as to Henrietta McNeill, and we need not decide whether it did or did not, the judgment roll shows that she and her husband, Ed McNeill, had been personally served with summons prior to the entry of interlocutory judgment of foreclosure and subsequent sale pursuant thereto and confirmation of sale and execution of deed by the commissioner, by all of which she is bound.

The seventh question challenges the sufficiency of the description of the lands as listed to support a valid sale. With regard to the Amos Palmer land the referee finds that "during the years 1927 to 1939, both inclusive, the lands in controversy herein were listed on the original abstract sheets for the purpose of taxation" in West Sanford Township in which the same are located as variously specifically described. This is a finding that the lands in controversy were listed in those years, and the finding is not challenged, even though the conclusion which follows is challenged. Moreover, the referee states that "plaintiff and defendants stipulated and agreed that the above constituted the sole listing of said lands for said years, and that none of said lands were listed for said years by any other person or otherwise than as above set out." Furthermore, the lands as listed are definitely described in the complaint and judgment in the foreclosure proceeding. And with regard to the Walter Palmer lands there are similar findings of fact and stipulations. Hence, the challenge was properly overruled.

The tenth question is whether the original sale on 6 July, 1940, having been held within sixty days from the date of the interlocutory order of foreclosure, 20 May, 1940, is invalid, even though the resales were had after the expiration of such time. It appears that in the interlocutory order of foreclosure, after declaring the amount of delinquent taxes a lien upon the lands, it is ordered "that in default of the payment of the foregoing taxes, and interest thereon, with the cost of this action, into the office of the clerk of this court on or before sixty days from the date

of this judgment, the defendants and all persons claiming by, through or under them be forever barred and foreclosed of all equity of redemption in and to the land herein described, and upon expiration of said period the commissioner hereinafter named shall make sale as hereinafter provided." It is thereinafter provided that the land be, and is condemned to be sold under direction of the court, for the purpose of discharging the tax lien, and that the commissioner therein appointed sell said lands at public auction at the courthouse door in Lee County, North Carolina, to the highest bidder for cash, after having advertised notice of the sale as therein set forth and report the said sale to the court. It further appears that the bid at the sale on 6 July, 1940, was raised, and a resale had, and that the bid at the resale was raised and the land resold, and that the bid at the second resale was confirmed on 26 August, 1940—the clerk finding as a fact that the sale was held in all respects in compliance with the provisions of notice and as required by law. The sale was thus finally had and consummated more than three months after the order of sale. Furthermore, it does not appear that any party in interest has been deprived of right to redeem within the sixty days allowed—forsooth, a right which could have been exercised at any time before valid confirmation. See *Beaufort County v. Bishop,* 216 N. C., 211, 4 S. E. (2d), 525. Hence, the point raised is untenable.

The twelfth question turns upon rulings on other questions herein considered.

The eleventh and thirteenth questions, the latter presented in supplemental brief of appellant, raise a more serious question. The eleventh question challenges the sufficiency of the deed as tendered to defendants Brinn to convey a good and merchantable title in fee simple as plaintiff contracted to do. The thirteenth question challenges the sufficiency of the orders of 5 October, 1938, and 13 March, 1940, for publication of notices of summonses and *alias* summonses and of the notices of publication thereon to bring minor heirs at law of Sam Palmer, if any, into court.

In this connection evidence taken before the referee tends to show that Sam Palmer, who acquired an undivided half interest in the Amos Palmer land, left North Carolina when a small child, and has not since returned to the State; that he married; that he died in Pennsylvania about eight or ten years ago; and that it is not known by his relatives, who testified in the present action, whether he had any children; but that his brother, Thomas, on a visit to his father about four years ago, talked about Sam and said that he was married but said nothing about his family—whether or not his widow was living or whether or not he had any children.

Pertinent findings of fact by the referee, approved by the court, are substantially these: (1) That Amos Palmer, who was married three

times, first to Annie, second to Minnie, and third to Rosa, died on or about 19 July, 1942, survived by his third wife, Rosa Palmer, and a daughter, Lenora Palmer, child of the first marriage, who married Ned Berryman, and two sons, Thomas Palmer, who never married, and Charles (Jabo) Palmer, who is not married, children of the second marriage, "and any heirs at law there may be of a son, Samuel Palmer," child of the second marriage, "who left the State of North Carolina about the year 1913, when he was a small lad, who married and died in Homestead, Pennsylvania, about the year 1933." (2) That at the time summons was issued and complaint filed in the said tax foreclosure suit Samuel (Sam) Palmer was dead, and "if he left him surviving a wife and/or children that such wife and children were nonresidents of the State of North Carolina." (3) That the notice of summons, published under order of 5 October, 1938, was directed: "To Sam Palmer and Minnie Palmer, Thomas Palmer and H. G. Kime, their respective wives and husbands, and the unknown heirs at law, if any, of the above named persons, and all persons, firms or corporations claiming any interest in the subject of the action." (4) That on 21 November, 1938, the clerk entered an interlocutory judgment of foreclosure in which it is adjudged that "none of the defendants other than K. R. Hoyle, Trustee, and those claiming by, through and under Sam Palmer have any interest in said property or in the distribution of the proceeds from said sale." And it is noted that the order further provides that "any surplus funds from the proceeds of said sale over and above the amount of taxes, interest and cost be held by the clerk of the Superior Court, and, at expiration of six months from the date of advertisement in this cause, shall be turned over to the defendant, the land owner." In connection with the adjudication in the order it may be recalled, as hereinbefore stated, that Lenora Palmer and Sam Palmer acquired the Amos Palmer land by deed from J. Amos Palmer and wife in the year 1912, and that Lenora Palmer, as Lenora Palmer Berryman, and her husband conveyed her interest to K. R. Hoyle, Trustee, by deed dated 28 April, 1938. (5) That on 13 March, 1940, which was after the order of consolidation of 11 March, 1940, to which the eighth question hereinabove referred to relates, T. J. McPherson, the attorney for the plaintiff Lee County, made an affidavit to the effect that summons had been returned by the sheriff of Lee County with endorsement thereon that after due search the defendants Sam Palmer and wife, Mrs. Sam Palmer, and Thomas Palmer and wife, Mrs. Thomas Palmer, are not to be found in Lee County, and that after due diligence said parties cannot be found in the State of North Carolina, and their whereabouts are unknown, and that they "and the heirs at law and the unknown heirs of either, if any, and their assigns, if any, have an interest in the said subject matter of this action," and are proper

parties to the action, and prays that an order be entered directing service by publication as provided by law, on "said Sam Palmer and wife, Mrs. Sam Palmer, and Thomas Palmer and wife, Mrs. Thomas Palmer, and the heirs at law and any unknown heirs and assigns of either or any of them." (6) That clerk of Superior Court, under date of 13 March, 1940, ordered that notice of summons be published as directed. The notice, under caption of the case, was addressed "To Sam Palmer and wife, Mrs. Sam Palmer, Thomas Palmer and wife, Mrs. Thomas Palmer, and to their heirs at law and unknown heirs and assigns, if any." (7) That on 20 May, 1940, judgment of foreclosure was entered under the caption of "Lee County *v.* Amos Palmer and wife, Mrs. Amos Palmer, Sam Palmer and wife, Mrs. Sam Palmer, . . . and the unknown heirs at law, if any, and assigns of Sam Palmer . . . and all persons, firms or corporations" interested in the subject matter (omitting other names for brevity) decreeing in pertinent part that "in default of the payment of the foregoing taxes . . . on or before sixty days from the date of this judgment, the defendants and all persons claiming by, through or under them be forever barred and foreclosed of all equity of redemption in and to the land herein described . . ." (8) The judge of Superior Court, in addition to and in amendment of findings of fact by the referee, finds as a fact (a) that on 11 November, 1940, the clerk of Superior Court entered a final order of distribution of the excess of proceeds of sale of the Amos Palmer land over and above the taxes and costs, distributing two-thirds to K. R. Hoyle, Trustee, and one-third to Thomas Palmer and Charles (Jabo) Palmer as heirs at law of Sam Palmer; and (b) "that the instant action was commenced and instituted more than one year after the making and delivery and registration of the deed from T. J. McPherson, Commissioner, to the plaintiff in this action . . ." and that McIver Park, Inc., became the purchaser of the Amos Palmer land in good faith and for full value, and without knowledge of any irregularity in said proceedings, if there were such. Exception 4.

The judgment roll in the tax foreclosure proceeding fails to show that a guardian *ad litem* was appointed to answer for any minor child or heir at law of Sam Palmer, then deceased, and there is no finding of fact in the present action that Sam Palmer left surviving no minor child or heir at law.

Appellants well say that under the facts found, if Sam Palmer, who died in 1933, left children surviving, such children could have been minors at the time when the notices of summonses were published, and still be minors. The question then arises as to whether the service of notice to "the heirs at law and unknown heirs" of Samuel Palmer, "if any," is sufficient to bring any minor child of Samuel Palmer into court?

And, if so, in the absence of representation by guardian *ad litem,* is such child bound by the judgment of foreclosure?

While the affidavit, orders and notices appear sufficient in form to constitute service by publication of notice of summons in accordance with prescribed procedure upon all persons named therein, including heirs at law of Sam Palmer, both adult and minors, C. S., 484 (3) and (7), yet the minors, if any, not having been represented by a guardian *ad litem* would not be bound by the judgment of confirmation rendered in the action. C. S., 451, 452 and 453. *Moore v. Gidney,* 75 N. C., 34; *Graham v. Floyd,* 214 N. C., 77, 197 S. E., 873; *Hill v. Street,* 215 N. C., 312, 1 S. E. (2d), 850; *Cox v. Cox,* 221 N. C., 19, 18 S. E. (2d), 713; *Simms v. Sampson,* 221 N. C., 379, 18 S. E. (2d), 705, and cases cited.

The tax foreclosure action, instituted under the provisions of C. S., 7990, to enforce tax liens against the Amos Palmer land declared under and by virtue of provisions of C. S., 7987, is an action in the nature of an action to foreclose a mortgage, in which the court may order a sale of such land for the satisfaction of the amount adjudged to be due. In such action it is provided by statute, C. S., 484 (3) and (7), that if any person having an interest in the real estate be a nonresident of this State, or be unknown to plaintiff, and his residence cannot, with reasonable diligence, be ascertained, and such fact is made to appear by affidavit, service of summons may be made by publication. It is also provided by statute, C. S., 451, that in all actions when any of the defendants are infants, whether residents or nonresidents of this State, they must defend by their general or testamentary guardian, if there be one within this State, and if they have none in the State, and any of them has been summoned, the court in which the action is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian *ad litem,* to defend in behalf of such infants, and the guardian *ad litem* so appointed shall file an answer to the complaint within the time prescribed. C. S., 453. *Graham v. Floyd, supra.* This applies alike to cases where notice of summons is made by publication. C. S., 452.

Moreover, in the Machinery Act of 1939, chapter 310, Article XVII, entitled "Collection and Foreclosure of Taxes," in effect at the time of the order of foreclosure on 13 March, 1940, it is provided in section 1719 (e) that while the fact that the listing taxpayer or any other defendant is a minor shall not prevent or delay the collector's sale or the foreclosure of the tax lien, all such defendants shall be made defendants and served with summons in the same manner as in other civil actions. It is also provided therein that persons who shall have disappeared or cannot be located and persons whose names and whereabouts are unknown, and all possible heirs or assignees of such persons may be served by publication.

Furthermore, it may be noted that in section 8038 of the Consolidated Statutes of 1919 provision was made for the owner or occupant of any land sold for taxes, or any person having a lien or interest or estate therein to redeem the same at any time within one year after the day of such sale, and for infants to redeem any land belonging to them within one year after the expiration of such disability in like terms as if the redemption had been made within one year from the date of sale. This statute, as it relates to infants, was applied in the case of *Hill v. Street, supra,* where *Devin, J.,* distinguished other cases.

However, in the Machinery Act of 1939, chapter 310, Article XVII, above referred to, section 1725, certain sections of the Consolidated Statutes of North Carolina, as amended, including section 8038, are thereby repealed except as otherwise provided in sections 1723 and 1724 of that article, the latter section not being pertinent to question now under consideration. And, while in section 1723 no reference is made to C. S., 8038, it is provided that numerous sections thereof, including section 1721, "shall also apply, to the extent that such application does not affect any action already taken or affect private rights already vested at the time of ratification of this article, to all taxes, due and owing to taxing units at the time of the ratification of this article, originally due within fiscal years beginning on or before 1 July, 1937, whether such taxes have heretofore been included in tax sales certificates or not, and whether such taxes are included in pending foreclosure actions or not." And section 1721 regarding time for contesting validity of tax foreclosure titles, provides that "no action or proceeding shall be brought to contest the validity of any title to real estate acquired, by a taxing unit or by a private purchaser, in any tax foreclosure action or proceeding authorized by this act or by other laws of this State in force at the time of acquisition of said title, nor shall any motion to reopen or set aside the judgment in any such tax foreclosure action or proceeding be entertained, after one year from the date on which the deed is recorded"; with provisos not here pertinent. Moreover, by said section 1723, C. S., 7990, is specifically preserved in full force and effect with respect to taxes originally due on or before 1 July, 1938.

Conceding, therefore, that C. S., 8038, be superseded by the provisions of the above section 1721 of the Machinery Act of 1939, chapter 310, with respect to present action, such provisions must be read in connection with statutes pertaining to service of summons upon minors, and the requirement that minor defendants be represented by guardian *ad litem*— the procedure by which minors are brought into court so as to be bound by judgment rendered in the action. Hence, in the present action, in so far as minors, if any, who have not been properly brought in court, are concerned, the date on which the deed is recorded, within the meaning of

17—223

said section 1721, would be the date on which a deed, executed under authority of a judgment binding on them, is recorded.

It is a well settled principle that, in the absence of fraud or the knowledge of fraud, one who purchases at a judicial sale, or who purchases from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter of the proceeding, and that the judgment on its face authorized the sale. *Graham v. Floyd, supra; Bladen County v. Breece,* 214 N. C., 544, 200 S. E., 13, and cases cited.

Applying this principle to case in hand, the purchaser at the tax foreclosure sale, looking to the proceeding to see if the court had jurisdiction of the parties, finds: (1) That those claiming by, through and under Sam Palmer had an interest in the land being sold—see interlocutory judgment of foreclosure, 21 November, 1938; (2) that Sam Palmer could not be found in the State of North Carolina, and that it was thought necessary to make his heirs at law parties to the proceeding, and that they were unknown—see affidavit, orders and notices of publication of summons; and (3) that no guardian *ad litem* had been appointed for any minor heir of Sam Palmer, if he be dead. And such purchaser is charged with notice of the law that minors who are not represented by guardian *ad litem* in a civil action to foreclose the lien of taxes are not bound by the judgment therein. Furthermore, there is no suggestion of fraud. Hence, purchaser at sale in question fails to come within the meaning of *bona fide* purchasers.

Specific performance of a contract to convey land will not be decreed when the vendor cannot make a good title to the land sold, or when his title thereto is doubtful, *Trimmer v. Gorman,* 129 N. C., 161, 39 S. E., 804; *Triplett v. Williams,* 149 N. C., 394, 63 S. E., 79; 24 L. R. A., 514, and *Thompson v. Power Co.,* 158 N. C., 587, 73 S. E., 888, or when he can convey only an undivided interest therein. *Bryan v. Read,* 21 N. C., 78.

On the record as now presented it appears that in the tax foreclosure action in question it was assumed that Sam Palmer was dead, that he left no children, and that his sister Lenora Palmer Berryman and his brothers Thomas and Charles (Jabo) Palmer were his heirs at law, and accordingly the proceeds of sale were distributed. However, there is no finding of fact in that respect. If the court should find that Sam Palmer died leaving no lineal issue surviving, or that he left lineal issue surviving none of whom was a minor at the time of service by publication of the notice of summons in the foreclosure proceeding in March, 1940, nothing else appearing, then the judgment confirming the sale, and deed to purchaser pursuant thereto would be valid. But if Sam Palmer died leaving lineal issue surviving, any of whom was a minor, the judgment

confirming the sale would not be binding on such minor, and to the extent of the interest of the minor, deed to purchaser pursuant to the judgment would not convey the title.

The cause will be remanded for the ascertainment of facts in these respects to the end that judgment may be rendered in accordance with such facts.

Error and remanded.