SAMUEL D. CHERRY, LUCY A. AMBROSE and CHARLIE W. CHERRY v. DENNIS WOOLARD.

(Filed 17 October, 1956.)

**1. Judicial Sales § 7—**

In the absence of fraud or the knowledge of fraud, one who purchases at a judicial sale, or who purchases from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter of the proceeding, and that the judgment on its face authorized the sale.

**2. Process § 4—**

G.S. 1-95 relates solely to the maintenance of chain of process against an original defendant not properly served, and has no application to the service of process upon an additional party after service has been had on the original defendant.

**3. Same—**

An *alias* summons issues only when the original summons has not been served upon the party named therein, and the denomination of process "*alias* summons" does not make it so.

**4. Infants § 13—**

The appointment of a guardian *ad litem* for infants before service upon the infants does not render the proceeding void, but is a mere irregularity which may be cured by service on the infants thereafter and the filing of an answer by the guardian.

**5. Same—**

A guardian *ad litem* was appointed for infants on the same day they were made parties and served with summons. The guardian so appointed refused to serve. The court thereafter appointed another guardian who accepted the appointment and filed answer. *Held:* The appointment of the substitute guardian and the filing of answer by him after the date the infants were served cures any irregularity in the appointment of the original guardian before service on the infants.

**6. Judicial Sales § 7: Judgments § 18—**

Where the judgment roll discloses sheriff's return of service by delivery to named defendants "also, copies to all minor defendants," a person examining the record will not be charged with the duty of minutely examining the record to ascertain whether the words quoted were in fact a part of the return as made by the sheriff, and in the absence of actual knowledge, a purchaser at a judicial sale under the judgment acquires title unaffected by any contention of defect of service.

**7. Taxation § 42—**

Where the judgment roll in a tax foreclosure on lands in the county discloses proceedings in conformity with the statutes then in effect, service on all persons having an interest in the land, including minors, the appointment of guardian *ad litem* for the minors and the filing of answer by such guardian, the purchaser acquires good title.

**8. Judicial Sales § 7—**

The purchaser at a judicial sale is not required to see to the proper disbursement of the purchase price.

JOHNSON, J., not sitting.

RODMAN, J., took no part in the consideration or decision of this case.

PARKER, J., dissents.

APPEAL by plaintiff from *McKeithen, S. J.,* at May 1956 Term, of BEAUFORT.

Civil action to test the validity of a tax foreclosure proceeding.

It is stipulated and agreed by all parties:

1. . . . . that on 8th day of November, 1922, one N. T. Woolard made and executed a deed to his daughter, Laura Myrten Cherry, the mother

of plaintiffs, the effective conveying words and clauses of which are as follows:

> "This deed made by N. T. Woolard (unmarried) to Laura Myrten Cherry, wife of S. B. Cherry, and her children of the second part: *WITNESSETH:* Has bargained and sold and by these presents does grant, sell and convey to the said Laura Myrten Cherry, during her life, and then to her children and their heirs and assigns. *HABENDUM:* To have and to hold the aforesaid tract of land and all privileges and appurtenances thereto belonging to the said Laura Myrten Cherry, during her life, and then to her children and their heirs and assigns, to their only use and behoof forever. *COVENANT:* With the said Laura Myrten Cherry and her children reserving unto himself the sole right in the above described land during his life only."

2. ". . . that Laura Myrten Cherry and her husband, S. B. Cherry, Samuel Dallas Cherry and Lucy Alice Cherry, infants, by their Guardian *ad litem,* S. B. Cherry, instituted an *ex parte* special proceeding which is numbered 2663 in the office of the Clerk of the Court of Beaufort County. In this proceeding, Laura Myrten Cherry and husband, S. B. Cherry, individually and as Guardian *ad litem,* sought to impose upon the premises in controversy a $2000 mortgage in favor of J. F. Buckman, Sr., of Washington, North Carolina. Thereafter and in consequence of the said proceeding, a Deed of Trust was executed to one J. F. Buckman, Jr., as Trustee for J. F. Buckman, Sr., securing four notes, each in the sum of $500.00, which said instrument covered the lands in controversy. This instrument has never been foreclosed and it is agreed that for the purpose of this appeal only it is not a part of defendant's chain of title. It is stipulated and admitted that there appears of record on the said Deed of Trust a handwritten marginal entry which reads as follows:

> " 'The lands described in this Deed of Trust were foreclosed as and for non-payment of taxes under and by virtue of a judgment of the Superior Court in the action entitled Beaufort County *v.* S. B. Cherry, *et al,* and the lands herein described have been conveyed by deed from W. L. Vaughn, Commissioner, to Milton H. McGowan, *et al,* January 16, 1932, Book 291, page 350. See also Judgment Docket (Tax Sales) Office of the Clerk of Superior Court, and tax suit No. W-96 in said office. This January 18, 1932. W. L. Vaughn, Commissioner.' "

And the stipulations further show that:

I. On 30 September, 1929, a civil action was commenced in Superior Court of Beaufort County in which Beaufort County was plaintiff and S. B. Cherry and his wife, Laura Myrten Cherry, "and all other persons claiming to have any interest in the lands herein described" were named defendants, and summons therein was served on 30 November, 1929, on the Cherrys, and notice of the action, setting out that it was to foreclose tax liens for the year 1927 on the lands described in the complaint, was published in the *Washington Daily News*, etc.

II. No further action of any kind was taken in the tax foreclosure proceeding until 30 September, 1931, and when two motions, and other subsequent proceedings were had as follows:

(1) The motion was that N. T. Woolard, and infants, Samuel Dallas Cherry, Lucy Alice Cherry and Charlie Cherry be made parties defendant in this action, and that some suitable person be appointed guardian *ad litem* for said infants, and that process be served upon them in manner provided by law. Thereupon Clerk of Superior Court, finding as a fact that the persons named in the motion are proper parties to this action, entered an order that Samuel B. Cherry, father of the infants above named, as well as children of himself and his wife not *in esse,* be appointed guardian *ad litem,* of said infants, as well as the contingent interests of any other children of himself and wife, and directed to represent their interests herein and to file such pleadings within the time allowed by law. And the Clerk further ordered therein that "*alias* summons" together with copies of the complaint be served upon said N. T. Woolard and upon Samuel B. Cherry as Guardian *ad litem.*

(2) A second motion (reciting the pendency of the action for the purpose of collecting from defendants delinquent taxes for the year 1927), was made by plaintiff for permission to amend the original complaint so as to incorporate therein taxes for the years 1929 and 1930 then due and unpaid, and to issue "*alias* summons" against defendants Woolard and the Cherry Children, minors, naming them, and S. B. Cherry as Guardian *ad litem* for them, as well as for those not *in esse,* to the end that they may appear and answer or demur to the additional claim of plaintiff, and that all taxes then due plaintiff be adjudicated in one action: Thereupon the Clerk of Superior Court, finding, among other matters, *prima facie,* that the matters therein set out are true, and the petition is *bona fide,* entered an order, on 30 September, 1931, "that *alias* summons in this action issue against the defendants N. T. Woolard, Samuel Dallas Cherry, Lucy Alice Cherry and Charlie Cherry, and against S. B. Cherry as Guardian *ad litem* of the three last named defendants and any other children of said S. B. Cherry and Laura Myrten Cherry, not *in esse*"; that amended or supplemental complaint may be

filed in this action by plaintiff covering taxes alleged as due for the years 1929 and 1930; and that copies of such summons and amended or supplemental complaint be served upon said N. T. Woolard, Laura Myrten Cherry and S. B. Cherry as Guardian *ad litem* of minors (naming them), and upon him individually, requiring all defendants to appear at the office of the Superior Court of Beaufort County in Washington, N. C., within thirty days after the service of process, and show cause, if any they have, why the prayer of plaintiff be not granted and the lands, described in the complaint, condemned and sold in the manner provided by law. Such amended and supplemental complaint was filed. And summons, dated 30 September, 1931, shows sheriff's return reading: "Served Sept. 30, 1931, by delivery to S. B. Cherry, individually and as Guardian *ad litem* of all minor interests; to Laura Myrten Cherry; and to N. T. Woolard copies of summons, of motion to amend original complaint, and of amended or supplemental complaint, also copies to all minor defendants."

3. Thereafter, on 26 October, 1931, plaintiff petitioned the court and moved that S. B. Cherry be removed as guardian *ad litem*, and a substitute be appointed, for that he had not answered in behalf of his wards, and, for that, upon information and belief, he purposely intends to file no answer or pleading on behalf of his wards, or to make any appearance whatever in their behalf. Pursuant thereto the Clerk of Superior Court, reciting that upon consideration of the affidavit on which the petition is based, and that it appearing that the matters therein set out are true, entered an order that Samuel B. Cherry appear before the Clerk on day set to show cause why he should not be removed as guardian *ad litem* and some other suitable and discreet person be substituted in his stead. The sheriff's return shows service 27 October, 1931, "by delivering a copy of this petition and of the order to show cause to S. B. Cherry." And also under date of 26 October, 1931, notice of the above petition was issued to, and served upon Samuel Dallas Cherry, Lucy Alice Cherry and Charlie Cherry, minors,—the service being made by sheriff by delivery of a copy thereof to each of them, and to their father, S. B. Cherry.

4. Thereafter on 7 November, 1931, pursuant to the notice above described, the Clerk of Superior Court revoked the appointment of S. B. Cherry as such guardian *ad litem*, and appointed S. M. Blount (who is found to be a suitable, discreet and disinterested person), guardian *ad litem* of said minors and of any other children of Samuel B. Cherry and Laura Myrten Cherry, not *in esse*, and "ordered and directed him to appear for and represent the interests of the infants herein named, as well as such minor interests as may not now be *in esse*, to inquire into and examine this proceeding; and to file such answers on behalf of

said infants and those not *in esse* as in his judgment may be proper." And on same day S. M. Blount accepted the appointment and agreed "to act faithfully and diligently in such capacity."

5. Thereafter on 9 November, 1931, the Clerk of Superior Court of Beaufort County entered an interlocutory judgment of foreclosure, in which there is recited, as appearing *prima facie*, the judgment roll of the entire foreclosure proceeding from its institution on 30 November, 1929, substantially as hereinabove related, including a recitation that "S. M. Blount, Guardian *ad litem*, has filed his answer in which he admits the allegations of the complaint and of the amended complaint, and submits the determination thereof to the court." (The answer does not otherwise appear.)

In this judgment the Clerk also makes findings of the taxes, due and unpaid, for the years 1927, 1929 and 1930, and that 1931 taxes are due and unpaid; and that same constitute a prior lien upon the lands described; and it is ordered and adjudged (1) that the lands be condemned to be sold under the direction of the court for the purpose of applying the proceeds of sale on the taxes, interest and costs; (2) that a named person be appointed commissioner to sell, to the highest bidder for cash, after advertisement as directed, and to report the sale to the court, in the manner prescribed by law for sales under order of court,—the sale to be "held on such date as said commissioner may deem most expedient, Sundays excepted."

6. And in the interlocutory order above described, it is found as a fact "that a lien and deed of trust subsists upon the lands described here from Laura Myrten Cherry, individually, and as commissioner of the Superior Court of Beaufort County, N. C., and S. B. Cherry, to J. F. Buckman, Jr., Trustee, dated November 25, 1929, and of record in office of Register of Deeds for Beaufort County in Book 279, page 488, which lien is junior only to the lien of plaintiff for taxes lawfully assessed against the lands herein described." And "it is further ordered that, upon the sale of the property, as herein provided for, the costs of this action and the amount of the taxes due hereunder shall be first paid from the proceeds of sale; that any surplus funds thereafter remaining in the hands of the commissioner, arising from the sale, shall be held in the office of the Superior Court of Beaufort County, for the use and benefit of the owners of the debt secured by the aforesaid deed of trust to J. F. Buckman, Jr., Trustee, and paid over to said owners as and for the indebtedness secured by said deed of trust; and the surplus, thereafter, shall remain in the office of the Clerk of the Superior Court of Beaufort County, No. Car. and held subject to the respective rights of the defendants thereto."

7. The commissioner reported under date 21 December, 1931, sale on Monday, 21st day of December, 1931, "it being the first day of a

regular civil term of the Superior Court of Beaufort County," to J. F. Buckman, J. F. Buckman, Jr., and Edmund T. Buckman, trading as J. F. Buckman & Son at the last and highest bid of $2,500.00. This sale was confirmed by order dated 18 January, 1932, and the commissioner, among other orders, authorized and directed to make and execute deed to Milton H. McGowan and wife, Mary E. McGowan, assignees of J. F. Buckman and others, upon payment of purchase price, and to file "an account of his receipts and disbursements in accordance with this decree."

8. And plaintiffs allege in their complaint that McGowan died in possession of said lands under the commissioner's deed, and that one, Lansche, instituted a special proceeding to sell the land to make assets to pay the taxes of McGowan, and under judgment of court in said proceeding sold said lands to defendant, executing a deed conveying the fee simple estate and the defendant is now in possession of said land under said deed, "claiming and asserting title thereto, adversely to these plaintiffs, in fee simple, and his said deed and assertion of title therein is a cloud upon the title of these plaintiffs." And defendant, answering these allegations, admits that he is in possession of said land under deed from W. J. Lansche, Jr., commissioner, and that he, the defendant, claims and asserts fee simple title to said land.

Upon the trial in Superior Court plaintiffs offered oral testimony tending to show lack of service of summons upon some of plaintiffs, the minors on whom the record on its face shows service.

From judgment as of nonsuit at close of plaintiffs' evidence, plaintiffs appeal to Supreme Court and assign error.

*LeRoy Scott and John A. Wilkinson for Plaintiffs, Appellants.*
*Rodman & Rodman for Defendant, Appellee.*

WINBORNE, C. J. The sole assignment of error presented on this appeal is based upon exception to the action of the trial court in granting defendant's motion for judgment as of nonsuit at the close of plaintiffs' evidence.

At the outset it is noted that the parties agree that for the purposes of this appeal the *ex parte* special proceeding numbered 2663 in the office of Clerk of Superior Court of Beaufort County is not a part of defendant's chain of title. Therefore, the inquiry here is, and will be confined to the collateral attack made by plaintiffs upon the civil action, commenced 30 November, 1929, in Superior Court of Beaufort County, wherein Beaufort County is plaintiff and S. B. Cherry, *et al.*, are defendants for purpose of foreclosing tax liens for the year 1927 on the lands described in the complaint, amended to include tax liens for years 1929 and 1930.

20—244

There are no exceptions to any particular part of the procedure followed. But plaintiffs, appellants, in their brief filed here, raise several questions in which they contend that reversible error appears upon the face of the record.

In this connection it is well settled in North Carolina that, in the absence of fraud or the knowledge of fraud, one who purchases at a judicial sale, or who purchased from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter of the proceeding, and that the judgment on its face authorized the sale. *Graham v. Floyd,* 214 N.C. 77, 197 S.E. 873, citing cases. See also *Bladen County v. Breece,* 214 N.C. 544, 200 S.E. 13, and cases cited. Also *Park, Inc., v. Brinn,* 223 N.C. 502, 27 S.E. 2d 548; *Powell v. Turpin,* 224 N.C. 67, 29 S.E. 2d 26.

Therefore in the light of statutes in effect in this State at the time of the institution and pendency of the action to foreclose, does it appear upon the face of the judgment roll that the court had jurisdiction (1) of the subject matter of the action, and (2) of the person of the minor defendants there, plaintiffs here?

Appellants state in their brief "this tax proceeding W-96 is either void or voidable with defects open and apparent on the record."

It is contended that while the minor defendants were brought into this action by what was called an *alias* summons, the calling of it *"alias* summons" does not make it so, citing *Mintz v. Frink,* 217 N.C. 101, 6 S.E. 2d 804.

But the difficulty plaintiff encounters is that the factual situation in *Mintz v. Frink, supra,* is not the same as in the case in hand,—and the statute C.S. 480, now G.S. 1-95, relied upon, is inapplicable here. The *Mintz* case was not dealing with the subject of summons for new parties, as in instant case, but with a case where the summons issued for defendant was not properly served,—the Court saying that the status of the process was the same as if service had not been made, and hence plaintiff then had the right, given by statute, C.S. 480 (now G.S. 1-95), to "sue out an *alias . . .* summons, returnable in the same manner as original process . . . a right which could and must have been exercised at any time within ninety days next after the date of the original summons." And the Court continued by saying: "In order to preserve a continuous single action referable to the date of its institution the original ineffective summons must be followed by process successively and properly issued . . . An *alias* follows next after the original . . ."

Thus, as the statute, C.S. 480, in effect in 1931, expressly states, "When the defendant in a civil action or special proceeding is not served with summons within the time in which it is returnable the plaintiff may sue out an *'alias* or *pluries* summons, returnable in the same man-

ner as original process.' " An *alias* summons issues only when the original summons has not been served upon a party defendant named therein. *Powell v. Dail,* 172 N.C. 261, 90 S.E. 194; *Rogerson v. Leggett,* 145 N.C. 7, 58 S.E. 596.

Now did the court have jurisdiction of the subject matter of the action to foreclose, and of the parties? C.S. 7987 provided in pertinent part that the lien of county taxes levied for any and all purposes in each year shall attach to all real estate of the taxpayer situated within the county by which the tax list is placed in the sheriff's hands, which lien shall attach on the first day of June, annually, and shall continue until such taxes, with the penalty and costs which shall accrue thereon, shall be paid.

And C.S. 7990 provided in pertinent part that a lien upon real estate for taxes due thereon may be enforced by an action in the nature of an action to foreclose a mortgage, in which action the court shall order a sale of such real estate, or so much thereof as shall be necessary for that purpose, for the satisfaction of the amount adjudged to be due on such lien, together with interest, penalties, and costs allowed by law, and the costs of such action. When such lien is in favor of the county, such action shall be prosecuted by and in the name of the county.

In an action pursuant to the provisions of C.S. 7990, it is provided by statute C.S. 451 that in all actions when any of the defendants are infants, they must defend by their general or testamentary guardian, if they have one within the State; and if they have no general or testamentary guardian in the State, and any of them has been summoned, the court in which said action is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian *ad litem,* to defend in behalf of such infants. The guardian so appointed shall, if the cause is a civil action, file his answer to the complaint within the time required for other defendants, unless the time is extended by the court, C.S. 453. See *Graham v. Floyd, supra; Park, Inc., v. Brinn, supra.*

Indeed the statute C.S. 453 declares that when a guardian *ad litem* is appointed he shall file an answer in the action admitting or denying the allegations.

Moreover, the appointment of the guardian *ad litem* before service upon the infants is an irregularity, but it does not render the proceeding void. The irregularity may be cured by the service of summons on the infants thereafter and the filing of the answer of the guardian. *Dudley v. Tyson,* 167 N.C. 67, 82 S.E. 1025; *Carraway v. Lassiter,* 139 N.C. 145, 51 S.E. 968.

In the light of these principles, the record discloses that S. B. Cherry was appointed guardian *ad litem* of his minor children, and of those not in being, on the same day they were made parties and served with sum-

mons. Apparently this was an irregularity, such as is above described, which could be cured by the service of summons on his children, and the filing of an answer by him. They were served, as the record indicates, but he did not file answer, and refused to serve as such guardian. In such event it was the duty of the plaintiff there as held by this Court in *Isler v. Murphy,* 71 N.C. 436, to have had appointed as guardian some discreet person who was willing to act and defend as the law prescribes. This is just what the plaintiff did in the present case. Upon motion of plaintiff S. B. Cherry was removed as guardian *ad litem* as aforesaid. And the record shows that accordingly S. M. Blount, who is found by the court to be a suitable, discreet and disinterested person, was appointed guardian *ad litem* of said minors and of any other children of Samuel B. Cherry and Laura Myrten Cherry, not *in esse,* and ordered and directed (1) to appear for and represent the interests of the wards for whom he was so appointed, (2) to inquire into and examine the proceeding, and (3) to file such answers on their behalf as in his judgment might be proper. And the record shows that on the same day S. M. Blount accepted the appointment and agreed "to act faithfully and diligently in such capacity." The record also shows that he filed answer in which he admitted the allegations of the complaint and of the amended complaint, and submitted the determination thereof to the court. His appointment and his filing of answer all occurred after the date the record shows the infants were served. On the face of the record this cured any irregularity that resulted from the appointment of S. B. Cherry as guardian *ad litem* before any of the infants were served.

Appellant calls attention, however, to the phraseology and punctuation in the return of the sheriff in respect to the clause "also, copies to all minor defendants," and the court is urged to study the photograph of the return shown in the record on this appeal, and to determine whether an issue should have been submitted to the jury as to whether there was any delivery of copies to the minor defendants,—that is, whether the above clause was in fact a part of the return as made by the sheriff.

In this connection this Court, adverting to a contention of similar nature in the case of *Graham v. Floyd, supra,* had this to say: "We cannot agree that one examining the title is held to constructive knowledge of so minute details. It would be otherwise if there were actual knowledge thereof." In the present case actual knowledge of the matter sought to be presented does not appear, and constructive knowledge of so minute detail will not be exacted of a purchaser for value at a sale under such proceeding,—much less of one who purchased at judicial sale to make assets to pay debts of the one who purchased at the tax foreclosure sale.

Therefore this Court holds that upon the face of the judgment roll of the tax foreclosure action, there is no such irregularity as will impair the validity of it. It is manifest that the court had jurisdiction of the parties, and of the subject matter, and that the judgment on its face authorized the sale. *Graham v. Floyd, supra,* and cases hereinabove cited.

Moreover, it was not incumbent upon the purchaser at the judicial sale to see that the money paid for the property was properly disbursed. *Perry v. Bassenger,* 219 N.C. 838, 15 S.E. 2d 365.

Indeed, as stated by *Stacy, C. J.,* in *Beam v. Gilkey,* 225 N.C. 520, 35 S.E. 2d 641, "When the purchaser paid his bid into court, or to its officer duly authorized to receive it, he was relieved of any further responsibility in connection with the interest then being sold."

Hence the judgment from which plaintiffs appeal is

Affirmed.

JOHNSON, J., not sitting.

RODMAN, J., took no part in the consideration or decision of this case.

PARKER, J., dissents.