TYSON, Judge.
 

 *219
 
 Nationstar Mortgage, LLC, d/b/a Champion Mortgage Company ("Champion"), appeals from the trial court's order, which granted Jerry and Pamela Curry's (collectively "the Currys") motion for judgment on the pleadings. We affirm.
 

 I. Background
 

 In 2011, Eulala W. McNeil, now deceased, owned two tracts of real property located in Wilkes County ("the Property"). On 25 January 2011, McNeil obtained a loan from and executed a promissory note payable to Sidus Financial, LLC ("Sidus"), which was secured by a deed of trust on the Property in favor of Sidus ("the Deed of Trust"). The Deed of Trust was recorded with the Wilkes County Register of Deeds on 31 January 2011 and encumbered the Property.
 

 That same day, Sidus transferred its rights in the Deed of Trust to Metlife Home Loans, a division of Metlife Bank, N.A. ("Metlife"), through an assignment of deed of trust that was also properly recorded. Subsequently, Metlife assigned the Deed of Trust to Champion on 15 October 2012. Champion properly
 
 *124
 
 recorded this assignment of deed of trust the same day.
 

 McNeil died on 11 August 2012, and Melissa Carlton Holmes was subsequently appointed as executrix of McNeil's estate. On 13 December 2012, Holmes filed a petition ("the Petition") in special proceeding 12 SP 368 ("the Special Proceeding") to seek a sale of the Property in order to repay the debts of the estate. The only respondent party named in the Petition was Ray M. Warren, an heir of McNeil.
 

 On 18 December 2012, Holmes filed an amended petition ("the Amended Petition"), adding Metlife, Sidus, and "HUD" as additional respondent parties. Neither petition named Champion in the caption of the case. However, both the Petition and Amended Petition described Champion's Deed of Trust on the Property as a debt of the estate. Specifically, the Petition stated one of the debts of the estate was "[t]he previously stated reverse mortgage owed to Champion Lender in the current amount of $66,988.86" and petitioner prayed for the court to "sell [the Property] in order to create assets to pay the taxes and above referenced debts of the Estate."
 

 On 26 March 2013, Robert G. Green, Jr., Esq., the attorney of record in the Special Proceeding, filed an affidavit of service by certified mail ("the Affidavit of Service") stating he had served Champion "with a copy of the Petition, Amended Petition, Notice of Hearing, and Special Proceedings Summons" by certified mail. Green also attached a copy of
 
 *220
 
 the signed receipt, which showed Champion had received these documents on 23 March 2013.
 

 On 26 April 2013, the Wilkes County Clerk of Superior Court entered an order ("the Order of Sale") authorizing the sale of the Property. The Order of Sale listed the "reverse mortgage owed to Champion" as one of the debts of the estate and concluded as a matter of law that the Property should be sold to create assets to pay "the above referenced debts of the Estate." Pursuant to the Order of Sale, the appointed commissioner posted a notice of sale ("the Notice of Sale"), which included the following statements: "This sale is subject to ad valorem taxes and such other liens as may appear of record[,]" and "[t]his sale is made subject to all prior liens and encumbrances, and unpaid taxes and assessments."
 

 The sale of the Property was conducted on 26 July 2013. After the sale remained open for a period of time for upset bids to expire, the Currys became the final bidder and purchased the Property for and paid $90,000. On 16 September 2013, the commissioner deducted fees and expenses and disbursed $84,692.69 to the executrix of the McNeil estate as proceeds from the sale of the Property. On 19 September 2013, the commissioner executed and delivered a deed for the Property to the Currys. After receiving the net sale proceeds in her capacity as executrix of the McNeil estate, Holmes embezzled the money and did not remit and pay the proceeds from the sale to extinguish the outstanding balance of the Deed of Trust to Champion.
 

 Champion commenced this action by filing a complaint on 21 February 2017 in superior court to seek a declaration that Champion's Deed of Trust is a first lien on the Property and an order for judicial foreclosure of the Deed of Trust. In their answer, the Currys alleged (1) an affirmative defense that, by operation of collateral estoppel, the Special Proceeding Order of Sale barred Champion's claims ("the Second Affirmative Defense"), and (2) asserted a counterclaim for a declaration that Champion's lien was extinguished by the sale of the Property in the Special Proceeding and their payment of the purchase price ("the First Counterclaim").
 

 The Currys subsequently filed a motion for judgment on the pleadings asserting their First Counterclaim and Second Affirmative Defense. Following a hearing on 18 September 2017, the trial court entered judgment on the pleadings in favor of the Currys on both their First Counterclaim and Second Affirmative Defense. The trial court's order decreed that (1) "Champion Mortgage is collaterally estopped from seeking a judicial sale of [the Property]" and (2) the "Curry[s] hold title to [the Property] free and clear of the lien of [Champion's] Deed of Trust."
 

 *125
 

 *221
 
 Champion filed timely notice of appeal from the trial court's order granting the Currys' motion for judgment on the pleadings.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2017).
 

 III. Issues
 

 Champion argues the trial court erred by concluding as a matter of law Champion was a named party to and bound by the Special Proceeding. Champion also argues the trial court erred by granting judgment on the Currys' First Counterclaim by decreeing the Special Proceeding extinguished Champion's prior recorded lien on the Property. Lastly, Champion argues the trial court erred in applying the doctrine of collateral estoppel in granting judgment on the Currys' Second Affirmative Defense.
 

 We need not reach the issue of whether Champion was collaterally estopped from seeking a judicial sale of the Property. Because Champion was on notice of and was a party to the Special Proceeding, the Currys acquired the Property free and clear of Champion's Deed of Trust.
 

 IV. Standard of Review
 

 The trial court's order granted the Currys' motion for judgment on the pleadings pursuant to North Carolina Rule of Civil Procedure 12(c). However, when "matters outside the pleadings [have been] considered by the [trial] court in reaching its decision on the judgment on the pleadings, the motion [is] treated as if it were a motion for summary judgment" under Rule 56 on review by this Court.
 
 Helms v. Holland
 
 ,
 
 124 N.C. App. 629
 
 , 633,
 
 478 S.E.2d 513
 
 , 516 (1996) (citation omitted).
 

 In making its decision on the Currys' motion for judgment on the pleadings, the trial court's order stated the court had considered the pleadings and exhibits, arguments of counsel at the hearing, and certain documents from the Special Proceeding file submitted during the 18 September 2017 hearing. One of these documents from the Special Proceeding file was the Affidavit of Service asserting Champion was served "with a copy of the Petition, Amended Petition, Notice of Hearing, and Special Proceedings Summons" by certified mail with return receipt. With these documents outside the pleadings being considered, the 12(c) motion for judgment on the pleadings will be treated for review as a motion for summary judgment under Rule 56 on appeal.
 
 See
 

 *222
 

 Horne v. Town of Blowing Rock
 
 ,
 
 223 N.C. App. 26
 
 , 30,
 
 732 S.E.2d 614
 
 , 617 (2012) ("Our case law has consistently treated submission of affidavits as a matter outside the pleadings." (citation omitted) ).
 

 "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to judgment as a matter of law."
 
 Summey v. Barker
 
 ,
 
 357 N.C. 492
 
 , 496,
 
 586 S.E.2d 247
 
 , 249 (2003) (citation and internal quotation marks omitted);
 
 see also
 
 N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017).
 

 A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.
 

 Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a
 
 prima facie
 
 case at trial. To hold otherwise ... would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.
 

 Draughon v. Harnett Cty. Bd. of Educ.
 
 ,
 
 158 N.C. App. 208
 
 , 212,
 
 580 S.E.2d 732
 
 , 735 (2003) (citations and quotation marks omitted),
 
 aff'd per curiam
 
 ,
 
 358 N.C. 131
 
 ,
 
 591 S.E.2d 521
 
 (2004).
 

 "Our standard of review of an appeal from summary judgment is de novo[.]"
 

 *126
 

 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (citing
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007) ). "The evidence produced by the parties is viewed in the light most favorable to the non-moving party."
 
 Hardin v. KCS Int'l, Inc.
 
 ,
 
 199 N.C. App. 687
 
 , 695,
 
 682 S.E.2d 726
 
 , 733 (2009) (citation omitted). "If the evidentiary materials filed by the parties indicate that a genuine issue of material fact does exist, the motion for summary judgment must be denied."
 
 Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller
 
 ,
 
 73 N.C. App. 295
 
 , 298,
 
 326 S.E.2d 316
 
 , 319 (1985).
 

 *223
 

 V. Party to the Special Proceeding
 

 Champion argues the trial court erred by concluding as a matter of law Champion was a party to and bound by the orders and judgment from the Special Proceeding. Champion asserts "[i]n the absence of a summons and a petition naming, and properly served on, Champion, it could not have been a party to the Special Proceeding." The Currys assert the Affidavit of Service from the Special Proceeding complies with the requirements for proof of service and shows Champion was a party to and bound by the Special Proceeding.
 

 Rule 4(j)(1)(c) of our Rules of Civil Procedure permits service by certified mail "[b]y mailing a copy of the summons and of the complaint, ... return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c) (2017). Once service by certified mail is complete, the serving party may make proof of service by filing an affidavit in accordance with
 
 N.C. Gen. Stat. § 1-75.10
 
 . N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2) (2017).
 

 Under
 
 N.C. Gen. Stat. § 1-75.10
 
 (a)(4) (2017), the affidavit must aver:
 

 a. That a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested;
 

 b. That it was in fact received as evidenced by the attached registry receipt or other evidence satisfactory to the court of delivery to the addressee; and
 

 c. That the genuine receipt or other evidence of delivery is attached.
 

 Such an affidavit, when filed along with a return receipt signed by the individual who received the mail, "raises a presumption that the person who received the mail or delivery and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process[.]" N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2) ;
 
 see also
 

 Granville Med. Ctr. v. Tipton
 
 ,
 
 160 N.C. App. 484
 
 , 490-91,
 
 586 S.E.2d 791
 
 , 796 (2003).
 

 Here, the Affidavit of Service comports with
 
 N.C. Gen. Stat. § 1-75.10
 
 . The Affidavit of Service states the petitioner in the Special Proceeding attempted to serve Champion "with a copy of the Petition, Amended Petition, Notice of Hearing, and Special Proceedings Summons in the [Special Proceeding] by certified mail, return receipt requested," and that Champion had, in fact, received service of the documents. Attached
 
 *224
 
 to the Affidavit of Service is the return receipt showing delivery to Champion. Therefore, the Currys are entitled to a rebuttable presumption of valid service.
 
 See
 

 Carpenter v. Agee
 
 ,
 
 171 N.C. App. 98
 
 , 100,
 
 613 S.E.2d 735
 
 , 736 (2005) ("By filing a copy of the signed return receipt, along with an affidavit that comports with
 
 N.C. Gen. Stat. § 1-75.10
 
 , plaintiff is entitled to a rebuttable presumption of valid service.").
 

 Champion has failed to rebut this presumption. At the 18 September 2017 hearing, Champion argued the person who had signed the receipt was not its registered agent. However, to rebut the presumption of regular service, Champion needed to "present evidence that service of process failed to accomplish its goal of providing [it] with notice of the [Special Proceeding], rather than simply questioning the identity, role, or authority of the person who signed for delivery of the summons."
 
 Granville
 
 ,
 
 160 N.C. App. at 493
 
 , 586 S.E.2d at 797.
 

 Champion's own admission shows that it had received prior notice of the Special Proceeding. Paragraph 59 of the Currys' First Counterclaim states: "[Champion] was made party to the Special Proceeding and was served with summons and a copy of the Petition." In response, Champion stated the
 
 *127
 
 following: "[Champion] admits that it was included
 
 as a party to be noticed in the Special Proceedings action
 
 ...." (emphasis supplied). This statement shows the Affidavit of Service "accomplish[ed] its goal of providing [Champion] with notice of the [Special Proceeding.]"
 
 See id.
 
 Champion has failed to rebut the presumption of proper service.
 

 Champion further asserts that the trial court erred in concluding it was a party to the Special Proceeding because Champion was never identified in the caption of either the Petition or Amended Petition. Champion cites
 
 Lee v. County of Cumberland
 
 in support of its contention. --- N.C. App. ----,
 
 809 S.E.2d 407
 
 ,
 
 2018 WL 710085
 
 at *1 (2018) (unpublished).
 
 Lee
 
 is an unpublished opinion and, therefore, lacks precedential value. N.C. R. App. P. 30(e)(3). Nonetheless, this Court finds it instructive.
 

 In
 
 Lee
 
 , the plaintiff sent the defendant, Keating, a copy of the amended complaint by certified mail; however, the plaintiff failed to name Keating in the caption of his complaint and never mentioned Keating in the body of the complaint.
 
 Id.
 
 at *7. This Court held "[b]ecause Plaintiff failed to name Keating in the caption of his complaint, and because Plaintiff failed to mention Keating in the body of the complaint, we conclude the trial court properly granted the motion to dismiss as to Keating."
 
 Id.
 

 *225
 
 In reaching this decision, the Court relied on
 
 Roberts v. Hill
 
 , stating:
 

 In
 
 Roberts v. Hill
 
 , ... the plaintiff named a defendant in the complaint's caption, but failed to make any allegations against that defendant
 
 in the body of his complaint
 
 . Our State Supreme Court directed the defendant's name be stricken from the complaint
 
 since there were no allegations against that defendant
 
 . Here, as in
 
 Roberts
 
 , Plaintiff fails to make any allegations against Keating in the body of his complaint, in addition to failing to name Keating in his complaint's caption.
 

 Id.
 
 (emphasis supplied) (citation omitted) (quoting
 
 Roberts v. Hill
 
 ,
 
 240 N.C. 373
 
 , 377,
 
 82 S.E.2d 373
 
 , 377 (1954) ).
 

 The facts here are readily distinguishable from both
 
 Lee
 
 and
 
 Roberts
 
 . Although neither petition named Champion as such in the caption, the body of both the Petition and Amended Petition described Champion's Deed of Trust mortgage, listed the amount owed to Champion on this mortgage, and stated the Property should be sold to pay off Champion's debt. Because the body of the Petition and Amended Petition alerted Champion to the nature of the Special Proceeding and asserted allegations specifically naming Champion, the mere failure to include Champion's name in the caption is not fatal.
 
 See
 

 Roberts
 
 ,
 
 240 N.C. at 377
 
 ,
 
 82 S.E.2d at 377
 
 .
 

 The Affidavit of Service shows the sale to the Currys was entitled to a rebuttable presumption of valid service of the "Petition, Amended Petition, Notice of Hearing, and Special Proceedings Summons[,]" and Champion has failed to rebut this presumption. Further, Champion's own admission indicates that it had been served and received prior notice of the Special Proceeding. Although the Petition and Amended Petition failed to name Champion in the caption, the body of these documents specifically named Champion's mortgage and provided Champion with notice of the Special Proceeding. For these reasons, Champion was a named party within and bound by the Special Proceeding. This assignment of error is dismissed.
 

 VI. Status of Champion's Deed of Trust
 

 Champion argues the trial court erred by granting judgment on the Currys' First Counterclaim by declaring the Special Proceeding had extinguished Champion's prior recorded lien on the Property. We disagree.
 

 *226
 
 As an initial matter, Champion, in its complaint, requested the trial court to declare that equitable title to the Property is vested in Champion and legal title is vested in the trustee of the Deed of Trust. Under North Carolina law, "[a] mortgage or deed of trust to secure a debt passes legal title to the mortgagee or trustee, as the case may be, but the mortgagor or trustor is looked on as the equitable owner of the land ...."
 
 Daniel Boone Complex, Inc. v. Furst
 
 ,
 
 43 N.C. App. 95
 
 , 101,
 
 258 S.E.2d 379
 
 , 385 (1979). N.C. Gen. Stat. § 28A-15-2(b) (2017) states:
 

 *128
 
 The title to real property of a decedent is vested in the decedent's heirs as of the time of the decedent's death; but the title to real property of a decedent devised under a valid probated will becomes vested in the devisees and shall relate back to the decedent's death[.]
 

 Here, at the time of the Special Proceeding, legal title to the Property was held by the trustee of the Deed of Trust for the benefit of Champion, and Ray M. Warren, Jr. and Melissa Carlton Holmes held equitable title to the Property, as devisees and executrix under the will of Eulala W. McNeil.
 
 See
 
 id.
 

 ;
 
 see also
 

 Complex Inc.
 
 ,
 
 43 N.C. App. at 101
 
 ,
 
 258 S.E.2d at 385
 
 .
 

 Chapter 28A of the North Carolina General Statutes governs the administration of a decedent's estate. Section 28A-15-1(a) provides: "All of the real and personal property,
 
 both legal and equitable
 
 , of a decedent shall be assets available for the discharge of debts and other claims against the decedent's estate[.]" N.C. Gen. Stat. § 28A-15-1(a) (2017) (emphasis supplied).
 

 The executrix or personal representative of the estate may "apply to the clerk of superior court of the county where the decedent's real property ... is situated, by petition, to sell such real property for the payment of debts and other claims against the decedent's estate." N.C. Gen. Stat. § 28A-17-1 (2017). "When real property sought to be sold, or any interest therein, is claimed by another person, such claimant
 
 may
 
 be made a party to the proceeding." N.C. Gen. Stat. § 28A-17-6 (2017) (emphasis supplied). In addition, the beneficiary of the deed of trust, not the trustee, is the proper party to be joined in the proceeding to sell real estate of the decedent.
 
 See
 

 N.C. Gen. Stat. § 45-45.3
 
 (c) (2017) ("[T]he trustee is neither a necessary nor a proper party to any civil action or proceeding involving (i) title to the real property encumbered by the lien of the deed of trust[.]").
 

 Here, the Wilkes County Clerk of Superior Court had the authority to enter the Order of Sale authorizing the sale of the Property.
 
 See
 

 *227
 
 N.C. Gen. Stat. §§ 28A-15-1(a) ; 28A-17-1 (2017). Holmes, as executrix of McNeil's estate, petitioned the clerk of superior court for an order to sell the Property in order to create liquid assets to pay the debts of the estate and the mortgage owed to Champion. As outlined above, Champion was a party to, named in and bound by the Special Proceeding; therefore, the clerk of court had the authority to sell both legal and equitable title in the Property.
 
 See
 
 id.
 

 ;
 
 see also
 
 N.C. Gen. Stat. §§ 28A-17-6 ; 45-45.3(c) (2017).
 

 Champion contends that its lien remained attached to the Property
 
 after
 
 the Special Proceeding, regardless of whether it was a named party to the proceeding or not. This contention is without merit for several reasons.
 

 Although Chapter 28A does not expressly provide for a sale of real property owned by an estate pursuant to the clerk's order to be free and clear of liens, North Carolina's long standing decisional law supports the view that where the lienholder is named as a party to the proceeding and the order authorizing the sale does not specify that the sale is subject to the lien, the property is sold free and clear of the lien to the purchaser. When the purchase price is paid by the purchaser, said lien is transferred to the proceeds of the sale.
 
 See
 

 Jerkins v. Carter
 
 ,
 
 70 N.C. 500
 
 (1874) ;
 
 see also
 

 Town of Tarboro v. Pender
 
 ,
 
 153 N.C. 427
 
 ,
 
 69 S.E. 425
 
 (1910) ;
 
 Moore v. Jones
 
 ,
 
 226 N.C. 149
 
 ,
 
 36 S.E.2d 920
 
 (1946) ;
 
 Williams v. Johnson
 
 ,
 
 230 N.C. 338
 
 ,
 
 53 S.E.2d 277
 
 (1949).
 

 In
 
 Moore
 
 , the administrator of the estate petitioned the court to have real property of the decedent sold to make liquid assets available to pay the following debts of the estate: (1) costs of administration, (2) a judgment docketed against the decedent, and (3) a deed of trust on real property.
 
 226 N.C. at 150
 
 ,
 
 36 S.E.2d at 921
 
 . The trial court ordered the costs of administration be paid first because
 
 N.C. Gen. Stat. § 28-105
 
 (now N.C. Gen. Stat. § 28A-19-6 ) required personal property to be distributed to the cost of administration before all other debts of the estate.
 

 Id.
 

 at 150-51
 
 ,
 
 36 S.E.2d at 921-22
 
 .
 

 Our Supreme Court reversed the trial court and held that under section 28-105, the statute dictating the order in which debts were to be paid, related exclusively to the
 
 *129
 
 application of personal property, and not the realty.
 
 Id.
 
 at 151,
 
 36 S.E.2d at 922
 
 . The Supreme Court went on to conclude "when the land is sold to make assets the proceeds remain real estate until all liens are discharged and are to be applied to the payment of such liens in the order of their priority."
 

 Id.
 

 Champion contends our Supreme Court in
 
 Moore
 
 "made [it] clear that a lien on property sold to make assets remains after the sale."
 

 *228
 
 However, Champion misinterprets this decision. Our Supreme Court in
 
 Moore
 
 held that when real property, which is burdened by a lien, is sold to make assets, the proceeds must first be distributed to satisfy the lien, rather than being distributed in accordance with the priority set by the statute governing the distribution of funds from personal property.
 

 Id.
 

 ;
 
 see also
 

 Pender
 
 ,
 
 153 N.C. at 430
 
 ,
 
 69 S.E. at 426
 
 (holding when the court ordered decedent's real property to be sold, the proceeds must be applied according to the priority of the liens);
 
 Williams
 
 ,
 
 230 N.C. at 345
 
 ,
 
 53 S.E.2d at 282
 
 (holding when real property is sold to make assets, "the proceeds of the sale retain the quality of real property to the extent necessary to discharge all liens thereon").
 

 Because the trial court had incorrectly applied the priority of payment of the proceeds and was reversed, our Supreme Court in
 
 Moore
 
 did not address whether the lien would remain on the real estate if the proceeds of the sale were insufficient to pay off the debt.
 
 See
 

 Moore
 
 ,
 
 226 N.C. at 152
 
 ,
 
 36 S.E.2d at 922-23
 
 . Nevertheless,
 
 Moore
 
 supports the position that the lien is transferred to the proceeds of the sale and when payment is made the buyer takes the property free and clear when the lienholder is made a party to the sale.
 

 We find additional justification for this position from our Supreme Court in
 
 Jerkins
 
 .
 
 See
 

 70 N.C. at 501
 
 . In
 
 Jerkins
 
 , our Supreme Court stated the following:
 

 The order of payment of the debts of the decedent is regulated by [statute,] which declares that judgments docketed are in force, have priority to the extent to which they are a lien on the property of the deceased at his death. The extent of the lien is the amount of the judgment, if the land is of greater value, but if the real estate is of less value, the extent of the lien is the value of the land only. Thus, if the value of the real estate is only five hundred dollars, and the personal assets fifteen hundred dollars, and the judgment is for one thousand dollars, the plaintiff would be entitled as a credit, upon his judgment, to five hundred dollars out of the real assets, that is, the value of the real estate, and for the residue of his judgment, he would come in
 
 pro rata
 
 with other creditors, as to the remaining personal assets.
 

 Id.
 

 The precedents of
 
 Jerkins
 
 ,
 
 Pender
 
 ,
 
 Moore
 
 , and
 
 Williams
 
 , read and taken together, support the proposition that when a lienholder is joined in a proceeding to sell land to make liquid assets to satisfy debts for a
 
 *229
 
 decedent's estate, the lienholder's lien follows the
 
 proceeds
 
 of the sale and the purchaser of the real estate who paid the purchase price in excess of the lein, takes title free and clear of the lien.
 

 Here, Chapter 28A sets out the procedures for the disposition of a decedent's property and Holmes, as the qualified executrix, followed these procedures. The Order of Sale disposed of both the legal and equitable title to the property, which included Champion's deed of trust, and the Order of Sale specified the purpose of the sale was to make liquid assets to pay the debts of the estate, including the Champion Deed of Trust.
 
 See
 
 N.C. Gen. Stat. § 28A-15-1(a). Because Champion was a party to the Special Proceeding, its lien followed the proceeds of the sale and the Currys took title to the Property free and clear of Champion's lien.
 
 See
 

 Jerkins
 
 ,
 
 70 N.C. at
 
 501 ;
 
 Pender
 
 ,
 
 153 N.C. at 430
 
 ,
 
 69 S.E. at
 
 425 ;
 
 Moore
 
 ,
 
 226 N.C. at 151
 
 ,
 
 36 S.E.2d at
 
 922 ;
 
 Williams
 
 ,
 
 230 N.C. at 345
 
 ,
 
 53 S.E.2d at 282
 
 .
 

 Champion also contends its lien remains upon the Property because the Order of Sale did not explicitly state the sale was to be "free and clear" and the Notice of Sale included the following language: "This sale is subject to ad valorem taxes and such other liens as may appear of record[,]" and "[t]his sale is made subject to all prior liens and
 
 *130
 
 encumbrances, and unpaid taxes and assessments."
 

 Even if the Order of Sale did not explicitly state the sale of the real property was to be free and clear of Champion's lien, it did specify that "it [was] in the best interests of the Decedent's Estate and for the necessity of paying the Decedent's just debts" to sell the Property "to create assets with which to pay the taxes and the above referenced debts of the Estate." The Order of Sale listed one of these referenced debts as the "mortgage owed to Champion Mortgage in the current amount of $66,988.86[.]"
 

 The Property was sold pursuant to N.C. Gen. Stat. § 28A-17-1
 
 et seq.
 
 , which allows the administrator to sell both the legal and equitable title and claims of all parties to the proceeding. As concluded above, Champion was a named party to, was served notice of, and bound by the Special Proceeding. The commissioner of the Special Proceeding under the clerk's order had the judicial authority to sell and convey all interests in the Property. Although the Notice of Sale said the sale was subject to prior liens, the substance of the Order of Sale made it clear the proceeds generated from the sale were directed to pay off these liens and debts of the estate.
 

 *230
 
 Although Champion never received the payoff, due to the executrix absconding with the proceeds, this does not change the fact that the Currys, as last and highest bidder at the sale, paid for the Property and took the Property free and clear of Champion's lien.
 
 See
 

 Cherry v. Woolard
 
 ,
 
 244 N.C. 603
 
 , 613,
 
 94 S.E.2d 562
 
 , 568 (1956) ("[I]t [is] not incumbent upon the purchaser at the judicial sale to see that the money paid for the property was properly disbursed." (citation omitted) ). "When the purchaser paid his bid into court, or to its officer duly authorized to receive it, he was relieved of any further responsibility in connection with the interest then being sold."
 

 Id.
 

 at 613
 
 ,
 
 94 S.E.2d at 569
 
 (citation and internal quotation marks omitted). Here, the Currys paid the purchase price, which was well in excess of Champion's lien, to the commissioner under the clerk's order, and had no further duty to ensure that the commissioner or the executrix paid Champion.
 
 See
 
 id.
 

 In North Carolina, an executrix is under a duty to ensure that creditors of the estate are paid according to their class.
 
 See
 
 N.C. Gen. Stat. § 28A-19-13 (2017). If the personal representative fails to pay out claims of the estate in accordance with their class, the personal representative commits a
 
 devastavit
 
 .
 

 Id.
 

 ;
 
 see also
 

 Coggins v. Flythe
 
 ,
 
 113 N.C. 102
 
 , 113,
 
 18 S.E. 96
 
 , 99 (1893) ("The general rule, both at law and in equity, is that it would be a
 
 devastavit
 
 if an executor or administrator should give preference to a debt of lower class over those duly presented of a higher dignity[.]" (citation omitted) ). However, in addressing the respective claims of Champion and the Currys only, which is all that is before us in this case, it is unnecessary for us to address any claims Champion may assert against the commissioner of the Special Proceeding and Holmes as the executrix of McNeil's estate.
 

 Champion was made a party to and received notice of the Special Proceeding. The procedure followed in the Special Proceeding allowed the commissioner to sell the Property to the Currys, as the highest and last bidder at the sale, upon their payment, free and clear of Champion's lien. Although the Notice of Hearing erroneously stated the sale was subject to all prior liens, Champion's lien followed the proceeds, and the substance of the Order of Sale showed the sale of the Property was to be conveyed upon payment as free and clear of Champion's lien. The trial court properly granted judgment on the Currys' First Counterclaim by declaring the Special Proceeding extinguished Champion's prior recorded lien on the Property.
 

 VII. Conclusion
 

 The Affidavit of Service created a rebuttable presumption of valid service of the petition and summons and Champion failed to rebut this
 
 *231
 
 presumption. The trial court did not err by concluding as a matter of law Champion was a named party to and bound by the Special Proceeding. The trial court also did not err in concluding as a matter of law the Special Proceeding extinguished Champion's prior recorded lien on the Property,
 
 *131
 
 which was converted into the paid proceeds of the sale.
 

 The trial court also correctly ruled the Currys, upon payment of proceeds exceeding the lien, took the Property free and clear of the lien. As a result, it is unnecessary for this Court to address Champion's remaining arguments concerning the trial court's application of the doctrine of collateral estoppel.
 

 The order of the trial court granting judgment on the pleadings, as reviewed on appeal for summary judgment under Rule 56, is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges CALABRIA and ZACHARY concur.