IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-661

Filed: 3 March 2020

Henderson County, No. 18-CVD-1056

SUSAN GREEN, Plaintiff,

v.

LISA BLACK, Defendant.

Appeal by Defendant from order entered 26 November 2018 by Judge C.W. McKeller in Henderson County District Court. Heard in the Court of Appeals 7 January 2020.

*Cosgrove Law Office, by Timithy R. Cosgrove, for Plaintiff-Appellee.*

*Stam Law Firm, by R. Daniel Gibson, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Lisa Black appeals from the trial court's 26 November 2018 order granting Plaintiff Susan Green's motion for summary judgment made pursuant to North Carolina Rule of Civil Procedure 56. Defendant contends that there exist genuine issues of material fact regarding (1) the construction of the promissory note that is central to the parties' dispute and (2) whether the parties breached that note, and that the trial court erred by granting Plaintiff summary judgment. We affirm.

## I.    Background

On 21 April 2015, Plaintiff loaned Defendant $50,000 in exchange for a promissory note (the "Note").  Under the terms of the Note, which Defendant drafted, Defendant promised to pay Plaintiff the $50,000 principal plus "interest payable on the unpaid principal at the rate of 2% per annum (or a total of $1000 USD), calculated yearly and not in advance."  The Note also set forth as follows:

> 2.  This Note will be paid on December 1, 2015.  If any additional amount is required to fulfill the obligation of $51,000 USD total to [Plaintiff], an additional Note will be created for the remaining amount due.  All diligence will be made to meet this payment obligation on the first date it is due.

As of 1 December 2015, Defendant had paid only $32,000 of the $51,000 the parties agree Defendant owed Plaintiff under the Note.  Thereafter, Defendant paid an additional $6,150 towards the outstanding debt she owed to Plaintiff under the Note, which Plaintiff accepted.  Defendant also attempted to make other partial payments on the debt which Plaintiff refused to accept.

On 26 June 2018, Plaintiff filed a verified complaint in which she (1) alleged that Defendant had defaulted on the Note and (2) sought the remaining $12,850 she alleged she was owed under the Note.  Defendant answered the complaint on 27 July 2018.  In her answer, Defendant admitted that she had not fully paid her debt obligation under the Note, but argued that she "has never refused to pay back this loan, is not in default of this loan, and is waiting for a reasonable payment schedule

to be written and agreed to between [Plaintiff] and [Defendant] for this loan." Defendant further stated that she "has in good faith made payments to the Plaintiff on the first of each month, voluntarily beginning on [sic] January 2016, until the Plaintiff would meet to create a new Note and mutually agreed upon payment schedule." Regarding the "payment schedule" she sought, Defendant pled that:

> Item Number 2 of the Note states that the Note be paid on December 1, 2015, and if any additional amount is still owed of the $51,000USD, after that date, of the personal loan to [Plaintiff], that an additional new Note will be created between [Plaintiff] and [Defendant] with a mutually agreed upon payment schedule for the remaining amount due. Both [Plaintiff] and [Defendant] on th[e Note] were fully aware of this fact and it was communicated at length upon the signed acceptance of the [Note] by both parties.

Defendant moved to dismiss[1] Plaintiff's complaint on 21 August 2018, and filed a memorandum of law in support arguing, *inter alia*, that the complaint should be dismissed because "Defendant is willing to repay the loan, but is waiting for a meeting with the Plaintiff to be able to create a new repayment Note with mutually agreed upon repayment terms and schedule."[2]

Plaintiff moved for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56, on 24 October 2018. On that same date, Plaintiff also filed an affidavit of

---

[1] The *pro se* motion to dismiss does not specify the procedural rule under which the motion was brought.

[2] The record does not reflect whether the trial court ruled upon Defendant's motion to dismiss.

her own in support of her motion for summary judgment, in which she stated that the Note "contains ambiguous language upon which the Defendant is relying as a defense to the Plaintiff's complaint." On 15 November 2018, Plaintiff's counsel filed an affidavit in support of Plaintiff's motion for summary judgment noting that there were checks written by Defendant to Plaintiff in 2016 which "Plaintiff refused to cash upon advice of Counsel" and for which "Defendant has mistakenly credited herself" in her filings to the trial court. Both Plaintiff and Plaintiff's counsel attested that the sum due under the Note was $12,850, as sought by the complaint. Defendant did not respond to Plaintiff's motion for summary judgment with an opposing motion or any affidavit or other proffer of evidence of her own.[3]

On 26 November 2018, the trial court entered an order granting Plaintiff's motion for summary judgment, and Defendant timely appealed.

## II. Discussion

This Court has said:

> The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed.

---

[3] Defendant's *pro se* filings reflected within the record on appeal are not verified. Accordingly, Defendant's filings contain mere allegations, which are not evidence, and do not create triable issues of fact in the face of contradictory evidence. *Cf. Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) ("A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.").

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.
>
> . . . .
>
> Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial. To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 211-12, 580 S.E.2d 732, 735 (2003) (internal quotation marks, brackets, and citations omitted).

> Our standard of review of an appeal from summary judgment is de novo. The evidence produced by the parties is viewed in the light most favorable to the non-moving party. If the evidentiary materials filed by the parties indicate that a genuine issue of material fact does exist, the motion for summary judgment must be denied.

*Nationstar Mortg. LLC v. Curry*, 822 S.E.2d 122, 125-26 (N.C. Ct. App. 2018) (internal quotation marks, brackets, and citations omitted).

Defendant contends that the trial court erred by granting Plaintiff's motion for summary judgment "because (1) the Note's terms are ambiguous or, if they are unambiguous, [Defendant] was not in default and (2) the Note contains an unenforceable agreement to agree or, if it is enforceable, [Plaintiff] breached the

- 5 -

Note." Both the purported ambiguity and the agreement to agree upon which Defendant's arguments on appeal focus are found within Section 2 of the Note. Accordingly, based upon the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits[,]" N.C. Gen. Stat. § 1A-1, Rule 56 (2018), we must determine whether Section 2 (1) reflects an ambiguity or (2) if it does not, was breached by Plaintiff, such that Plaintiff is not entitled to judgment as a matter of law on her breach of contract claim.

As noted above, Section 2 reads as follows:

> 2. This Note will be paid on December 1, 2015. If any additional amount is required to fulfill the obligation of $51,000 USD total to [Plaintiff], an additional Note will be created for the remaining amount due. All diligence will be made to meet this payment obligation on the first date it is due.

Defendant argues that Section 2 is ambiguous because it is

> susceptible to at least two interpretations. First, [Defendant] will pay on 1 December 2015 and, if she does not, she is in default. Second, [Defendant] should make a diligent effort to pay by 1 December 2015 but this is only the "first date" the loan is due. If [Defendant] does not pay by 1 December 2015, the parties will create an "additional Note" for the amount remaining due.

In effect, then, Defendant argues that it was impossible for her to default on the Note, because the second sentence of Section 2 (the "Second Sentence") contemplated that "an additional Note will be created for the remaining amount due" if Defendant did not pay in full on the "first date." As mentioned above, in her answer,

Defendant pled that she "has never refused to pay back this loan, is not in default of this loan, and is waiting for a reasonable payment schedule to be written and agreed to between [Plaintiff] and [Defendant] for this loan." Plaintiff does not contest Defendant's construction of the Second Sentence, but argues that because it "would leave [Plaintiff] at the mercy of [Defendant] and could result in [Plaintiff] not ever getting paid," the Second Sentence is "wholly repugnant to the original intent of the parties" and "serves to undo the very basis of the bargain[,]" and "should be set aside or rejected."

Like the parties, we read the Second Sentence as the parties' agreement that in the event Defendant did not fully pay off her debt under the Note by 1 December 2015, the parties would then negotiate an additional promissory note for the outstanding debt. The Second Sentence therefore reflects a mutual conditional offer to execute an additional promissory note—importantly, on unspecified terms, and therefore subject to future agreement by the parties—in the event of Defendant's default. Because the record demonstrates that there was a meeting of the minds regarding the Second Sentence, the Note is not ambiguous.[4]

However, the question remains whether the Second Sentence is enforceable. If enforceable, Plaintiff's failure to execute an additional promissory note with

---

[4] Plaintiff's statement in her affidavit that the Note contains unspecified "ambiguous language" does not control our analysis. *See International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989) ("A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." (citation omitted)).

Defendant upon Defendant's default would itself be a breach of the Note's terms, such that Defendant's breach arguably might be excused.

"An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations." *Young v. Sweet*, 266 N.C. 623, 625, 146 S.E.2d 669, 671 (1966).

The Second Sentence contains no specifics regarding the terms of the additional promissory note, and Defendant repeatedly argues that that new note's terms, including its "payment schedule[,]" and any rate of interest accruing upon the unpaid debt, would have to be "mutually agreed upon" by the parties before the new note could be executed. Because it does not contain specifics, and instead leaves *everything* "to be agreed upon as a result of future negotiations[,]" we conclude that the Second Sentence is void for uncertainty and unenforceable.[5] *See Young*, 266 N.C. at 625, 146 S.E.2d at 671 (in real-estate context, "[a] covenant to let the premises to the lessee at the expiration of the term without mentioning any price for which they

---

[5] Were we to hold the Second Sentence to be enforceable, Defendant would have court-enforced leverage to refuse to pay back the unpaid debt except for on wildly-unjust terms: e.g., Defendant could hold firm that she would only agree to a new note that allowed her to pay one cent every fifty years, without any interest, in which case inflation would render the unpaid debt wholly valueless.

are to be let, or to renew the lease upon such terms as may be agreed on, in neither case amounts to a covenant for renewal, but is altogether void for uncertainty.").

The next question is whether the void Second Sentence may be set aside and the remainder of the Note enforced, or whether the entire Note is unenforceable by virtue of the unenforceable provision. Our Supreme Court has said:

> When a contract contains provisions which are severable from an illegal provision and are in no way dependent upon the enforcement of the illegal provision for their validity, such provisions may be enforced. It is well established that the fact that a stipulation is unenforceable because of illegality does not affect the validity and enforceability of other stipulations in the agreement, provided they are severable from the invalid portion and capable of being construed divisibly.

*Rose v. Vulcan Materials Co.*, 282 N.C. 643, 658, 194 S.E.2d 521, 531-32 (1973) (internal quotation marks and citations omitted). This Court has said that the question of whether an unenforceable contractual provision is severable depends upon whether the provision is "the main purpose or essential feature of the agreement[,]" or whether other such provisions are "dependent on" the unenforceable provision. *Robinson, Bradshaw, & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 314, 498 S.E.2d 841, 848 (1998) (upholding summary judgment on contingency-fee contract: "Despite the invalidity of this section of the contract, the remainder of the contingency fee contract is still enforceable because it is also severable from, and not dependent in its enforcement upon, the void portion. The severable portion is not the

main purpose or essential feature of the agreement." (citation omitted)); *Am. Nat'l Elec. Corp. v. Poythress Commercial Contractors, Inc.*, 167 N.C. App. 97, 101, 604 S.E.2d 315, 317 (2004) (upholding summary judgment for defendant: "We therefore conclude that the 'pay when paid' clause of the contract is indeed unenforceable, but that it is severable from the rest of the contract and does not defeat the other portions of the contract, such as the notice of delay provision, which are in no way dependent on the illegal provision.").

The main purpose of a promissory note is to memorialize an agreement to exchange money for a promise to pay the money back with interest on a date certain. The amount of the principal loaned, the amount of interest that accrues thereupon, and the date when the borrower is required to pay back the principal with accrued interest to the lender are all examples of essential provisions of a promissory note that cannot be severed from the note. The Second Sentence, which only contemplated what the parties would do in the event of default, and upon which none of the Note's essential provisions described above depend,[6] is not such an essential provision. We

---

[6] An argument that the Second Sentence effectively renders the due-date provision meaningless—and that the due-date provision therefore is "dependent on" the Second Sentence— would fail, because the parties agree that the Note's due date was 1 December 2015. The determination of the Note's due date therefore is "dependent on" nothing else. *See infra* (rejecting Defendant's argument that the Note had multiple due dates).

Further, if construed to render the due-date provision meaningless, the Second Sentence is irreconcilable with the first sentence of Section 2—i.e., the due-date provision—and is repugnant to the general purpose of the Note, which further supports our conclusion that the Second Sentence must be set aside as unenforceable. *See Davis v. Frazier*, 150 N.C. 447, 451, 64 S.E. 200, 201 (1909) ("It is

accordingly conclude that it is severable from the Note and should be set aside, and that the remainder of the Note may be enforced.

The final question is therefore whether Plaintiff has established via the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits[,]" N.C. Gen. Stat. § 1A-1, Rule 56, that there are no genuine issues of material fact regarding whether (1) Defendant defaulted on the Note (construing the Second Sentence as stricken therefrom) and (2) Plaintiff is owed $12,850 as a result, such that Plaintiff is entitled to judgment as a matter of law for that amount.

Regarding the default, Defendant admitted in her answer that she (1) agreed to the Note, (2) received $50,000 from Plaintiff, and (3) had not paid Plaintiff the entirety of the principal and interest due under the Note as of 1 December 2015. As mentioned above, Defendant argues in her brief on appeal that the Note could be interpreted to mean that 1 December 2015 was the "first date" the loan is due, which—rather than creating a date upon which Defendant's failure to pay would create a default—merely triggered the Second Sentence's obligation to create an "additional Note" for the amount outstanding. However, Defendant has directed our attention to no authority setting forth that a loan can become due on multiple dates such that the legal import of nonpayment by the borrower upon the "first date" the

---

an undoubted principle that a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside." (internal quotation marks and citation omitted)).

loan is due is somehow qualified by a latter due date, and we are aware of no such authority. In the absence of authority to the contrary, we reject Defendant's theory that the Note contemplated multiple due dates as an unreasonable construction that would render an absurd result. *See Fairbanks, Morse & Co. v. Twin City Supply Co.*, 170 N.C. 315, 321, 86 S.E. 1051, 1054 (1915) ("All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results[.]"). The admissions within Defendant's answer accordingly amount to an admission that Defendant defaulted on the Note.

Regarding the amount owed, Defendant admitted in her answer to owing $12,250 to Plaintiff under the Note as of 27 July 2018. Later, in her 21 August 2018 memorandum in support of her motion to dismiss, Defendant stated that the amount she owed was $11,050. As mentioned above, both Plaintiff and her counsel stated in their affidavits that Defendant owed Plaintiff $12,850, as sought in the complaint.

The affidavit submitted by Plaintiff's counsel in support of Plaintiff's motion for summary judgment (1) explains that the difference in the amounts of outstanding debt claimed by the parties is the result of checks written by Defendant to Plaintiff in 2016 which "Plaintiff refused to cash upon advice of Counsel" and for which "Defendant has mistakenly credited herself" and (2) attaches a 5 July 2016 letter written by Defendant contemplating that she had written checks to Plaintiff which were "Not Cashed" as of that date. Defendant did not respond to Plaintiff's motion

for summary judgment with any opposing motion or any affidavits or other evidence of her own,[7] and nowhere has (1) argued that Plaintiff's counsel's characterization of any particular check as uncashed is inaccurate or (2) disputed that she wrote the letter in the record indicating that various attempts by Defendant to pay Plaintiff had been refused. Accordingly, because Defendant has not directed our attention to any authority standing for the proposition that Plaintiff was required to cash Defendant's checks or otherwise accept anything offered by Defendant in partial payment for the outstanding debt owed by Defendant under the Note, we conclude that it was proper for the trial court to conclude as a matter of law that Defendant owed Plaintiff $12,850 under the Note as the complaint and Plaintiff's affidavits claimed.

## III.    Conclusion

Because we conclude that Plaintiff has demonstrated that no genuine issue of material fact exists and that Plaintiff is entitled to judgment as a matter of law on her breach of contract claim, we affirm the trial court's 26 November 2018 order granting Plaintiff summary judgment thereupon.

AFFIRMED.

---

[7] As mentioned above, *see supra* note 3, Defendant's *pro se* filings are not verified, and therefore cannot create triable issues of fact in the face of Plaintiff's affidavits. N.C. Gen. Stat. § 1A-1, Rule 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.").

Judges BRYANT and ZACHARY concur.